ANNA RUSSELL *vs.* LEVI RUSSELL.

If an assignment of dower is made in a right of fishing in a stream within the ebb and flow of the tide, without specifying the days on which the widow may fish, yet one of the heirs, who afterwards negotiates with her for the purchase of her share, though without agreeing upon any price, and with her consent uses it, is estopped to deny her right in the fishery, and is liable to her for the value of her share.

ACTION OF CONTRACT, brought on the 22d of March 1856, to recover for the use of the plaintiff's fish rights in Alewive Brook

in Somerville, from 1850 to the date of the writ. Trial by jury was waived; and at the trial before *Sanger*, J. in the court of common pleas at December term 1857, the following facts appeared:

The plaintiff was the widow of Philemon R. Russell, who died in 1842, and during his life fished for alewives in certain parts of Alewive Brook, being the riparian proprietor upon both sides of the stream. On the 21st of March 1843 commissioners were appointed by the probate court to set off the plaintiff's dower, and on the 15th of August 1843 a warrant was issued to the same commissioners to make partition of the estate of Philemon R. Russell among his heirs at law, of whom the defendant was one. By the returns made by the commissioners and accepted by the probate court on the 21st of November 1843, partition was made of the real estate among the heirs "exclusive of the fish right," and the plaintiff's dower was set off by metes and bounds, not bounded in any part on the brook, and " exclusive of a fish right which the deceased had in the Alewive Brook, so called; being unable to set off by bounds one third of said right, we assign to the widow one third of said fish right, she having the privilege to pass to the same over land set to other heirs of the deceased, at the usual times and places, one third of the time, for the purpose of catching fish." Alewive Brook was a salt water stream running into Mystic River, and the fishing place in question was within the ebb and flow of the tide. The plaintiff introduced evidence tending to show that the defendant negotiated for, and with her consent used, the fish rights of the plaintiff and of some of the other heirs, but no price was agreed upon, and that subsequently he refused to pay the plaintiff for the use of her rights, upon the ground that she had no fish rights in the stream.

Upon these facts the judge ruled, as matter of law, that the plaintiff had no fish right as she claimed, and she alleged exceptions.

*M. G. Cobb*, for the plaintiff.

*N. St. J. Green*, for the defendant. The *locus* being a salt water navigable stream, Philemon R. Russell had no exclusive

right of fishery. *Lakeman* v. *Burnham,* 7 Gray, 440. If he had a several fishery, it would not be the subject of dower, except as incident to land bounding upon the stream and set off to the widow. Rev. Sts. *c.* 60, § 1. If in itself, as disconnected with the land, it was the subject of dower, then the dower was wrongly assigned, inasmuch as the widow was not endowed of the rents, issues or profits thereof. Rev. Sts. *c.* 60, § 4. Co. Lit. 32 *a.* 1 Cruise Dig. *tit.* 6, *c.* 2, § 2. The assignment is also void for indefiniteness, because it gives no certain and particular times to the plaintiff in which she may fish, but gives her generally the right to fish one third of the time. Co. Lit. 32 *a.* 4 Kent Com. (6th ed.) 63. There is no evidence that the defendant ever hired or used and occupied the plaintiff's right.

SHAW, C. J. This action is brought by the widow of Philemon R. Russell to recover of the defendant compensation according to contract for the use of her fish right in Somerville, formerly part of Charlestown. It is found that this fishing in Alewive Brook is part of the herring fishery of Mystic River and Little River, as regulated by *Sts.* 1788, *c.* 68, and 1820, *c.* 67; being a salt water stream, in which the sea ebbs and flows. If so, it may be questionable whether a several fishery can be had in it, unless where it has been conferred by statute. But we have not thought this important; because it seems to have been assumed by the widow and heirs that Philemon R. Russell, the husband and ancestor, as riparian proprietor or otherwise, had a right of fishery there; it was recognized in the assignment of dower, and in the partition of real estate amongst the heirs, of whom the defendant was one, taking a share in his own right and purchasing the right of several others.

The right of fishery being regarded as real estate, it was assumed by the commissioners that the widow was dowable of it, and they set it off as part of her dower. If this setting off was invalid and not well assigned, because the commissioners did not designate on what days in special she should have a right to fish — it not being set off to the other heirs — then the entire fishery was left in common to the widow and heirs; and then by the Rev. Sts. *c.* 60, § 6, until assignment, she was entitled to

one third of the rents and profits, or annual value, so that she had an undivided aliquot part of the fishery.

Under these circumstances, it appears to us that the defendant having acknowledged the plaintiff's title, negotiated with her for it, and used and enjoyed it, he was estopped from denying her title. If he had thus hired and enjoyed this right, an l there was no express stipulation what sum he should pay annually for it, the law implied a promise on his part to pay what it was reasonably worth.

We think there was evidence proper to go to a jury, upon which they might find that he so acknowledged her title, and did hire and use her right, and became bound to pay a reasonable compensation for it. The direction of the court, therefore, that, as matter of law, the plaintiff had no fish right and could not recover, was incorrect.                    *Exceptions sustained.*